UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 22-cr-42 (DWF/DTS) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Saditt Fernando Ontiveros (1), | |
| Defendant. | |

Saditt Fernando Ontiveros is charged with conspiracy to possess with intent to distribute methamphetamine. Indictment, Dkt. No. 32. He moves to suppress the post-arrest statements he made during a custodial interrogation in a hotel room while a search warrant was being executed. Motion, Dkt. No. 79. He contends he did not explicitly waive his right to remain silent, and any purported implied waiver from his course of conduct in answering questions was not valid due to his limited proficiency in English and the fact that he was sick and taking medication. The Government opposes the motion, arguing that Ontiveros knew and understood his *Miranda* rights, validly waived them, and that the record shows he was proficient in English and not impaired. For the reasons discussed below, the Court recommends denying the motion.

**FINDINGS OF FACT**

On January 10, 2022 officers from the West Metro Drug Task Force (WMDTF) and Hennepin County Sheriff's Office executed a search warrant at a hotel room in Roseville, Minnesota. Ontiveros answered the door and was the only one in the room. Hrg. Tr. 14, 24.[1] He was placed under arrest and handcuffed. Hrg. Tr. 15, 25. Officers searching the

---

[1] A transcript of the July 7, 2022 evidentiary hearing is at Docket No. 105.

room found, among other things, approximately six pounds of methamphetamine. Hrg. Tr. 14.

WMDTF Investigator Jeremiah Jessen, the lead case agent, and Officer Larissa Johnson brought Ontiveros to a small bathroom in the hotel room to interview him. Hrg. Tr. 14-15, 47-48. The interview lasted 6 minutes 49 seconds. Gov't Ex. 1 (audio recording). It is transcribed and the Spanish portions have been translated.[2] Gov't Ex. 1A.[3]

Ontiveros's native language is Spanish. Investigator Jessen does not speak Spanish. Hrg. Tr. 37. Officer Johnson speaks both Spanish and English. Hrg. Tr. 45-46. Investigator Jessen testified he was talking with Ontiveros before the interview, and Ontiveros was speaking in English. Hrg. Tr. 35. The interview began in English:[4]

| Jessen | All right, [unintelligible/inaudible]. I'm Officer Je[s]sen. I'm with uh, West Metro Drug Task Force from Hennepin County, okay? It's uh, January 10, 2022. It's approximately 18:27 hrs. And we are currently located at the Key Inn in the City of Roseville and we're in room number 409, okay? Uh, I'd like to ask questions in regards to uh, why I am here today, okay? |
|---|---|
| Ontiveros | Okay. |
| Jessen | But in order for me to do that, first I need to read you your rights per the Miranda Warning. Do you understand that? |
| Ontiveros | Yes. *Do you speak Spanish?* |

---

[2] Officer Johnson is identified in the transcript as "FV1" Female Voice One; Investigator Jessen is "MV1" Male Voice One; and Ontiveros is "MV2" Male Voice Two. *See* Gov't Ex. 1A at 1. The original Spanish words and sentences are transcribed in Gov't Ex. 1A but are omitted in this Report and Recommendation. Only the English translation is reproduced here.

[3] The chart on page 4 of the Government's memorandum [Dkt. No. 118] incorrectly identifies the transcript as Exhibit "2." It was designated as Exhibit 1A at the hearing, and both the Government and Ontiveros cite it as such in their legal memoranda.

[4] Words or sentences that are italicized were originally uttered in Spanish. Gov't Ex. 1A at 1.

| | |
|---|---|
| Jessen | Do you want me to read them to you in Spanish? |
| Ontiveros | You -- you don't have … |
| Jessen | She speaks Spanish. Would you rather her … |
| Ontiveros | [unintelligible/inaudible] |
| Jessen | … read them to you in Spanish? |
| Ontiveros | Okay. |
| Jessen | Okay. Uh, Investigator Johnson from, is going to read the uh, Spanish Miranda. |
| Johnson | *Before asking you questions, I will let you know of your rights.* |
| Ontiveros | Okay. |

Gov't Ex. 1A at 1-2.

Officer Johnson then read him the *Miranda* warning in Spanish, after which the following exchange took place:

| | |
|---|---|
| Johnson | *Do you understand what your rights are?* |
| Ontiveros | Uh huh. |
| Johnson | *Yes or no?* |
| Ontiveros | *Yes.* |
| Johnson | *Yes? Do you want to give you the rights that were mentioned and talk with is [sic] now?* |
| Ontiveros | *Uh, Like what -- what type of questions?* |
| Johnson | *It's -- it's yes or no.*<br>He's asking what kind of questions we're going to ask him. |

| Unidentified male voice in background | … two last names and [unintelligible/inaudible] [Heard in the background] |
|---|---|
| Johnson | And I'm telling him it is a "yes or no" you want to talk to us or not. |
| Ontiveros | *Uh … right now I feel …*<br>I don't feel good, so … |
| Unidentified male voice in background | Uh, that's a good question [Heard in the background] |
| Jessen | If I ask you a question you don't want to answer, you just say "no." Okay? So you might uh -- |
| Ontiveros | No. |
| Jessen | … ask him a few questions. |
| Ontiveros | Okay. |
| Jessen | Yes? He's nodding, "yes." |
| Ontiveros | Yes. |
| Jessen | Yes, okay. All right. How long have you been here at the uh, Key Inn? |
| Unidentified male voice in background | So 165 for [unintelligible/inaudible] [Heard in the background] |
| Jessen | How many days you think you've been here? |
| Ontiveros | I don't know, like four. |

Gov't Ex. 1A at 3-4.

The interview continued in English between Investigator Jessen and Ontiveros. *Id.* at 4-8. Investigator Jessen testified he prefers to interview someone in a language they both understand, and he conducted the interview in English based on his interactions with Ontiveros. Hrg. Tr. 38.

4

During the rest of the interview, Ontiveros answered every question in English without hesitation. Gov't Exs. 1 & 1A at 4-8. He did not seek clarification of what any word meant, ask any questions in Spanish, or ask Officer Johnson to translate. *Id.* There is no indication he was impaired. *Id.* Officer Johnson was present for the entire interview. Hrg. Tr. 32, 49, 69. She testified it was her impression that Ontiveros fully understood the dialogue he was engaged in with Investigator Jessen. Hrg. Tr. 69. Investigator Jessen testified that Ontiveros did not appear confused by any questions; was alert, coherent, and cooperative; and his responses led Investigator Jessen to believe Ontiveros understood what Investigator Jessen was saying. Hrg. Tr. 18-19, 42. It appeared to Investigator Jessen that Ontiveros was fluent in English. Hrg. Tr. 19, 33-34.

### CONCLUSIONS OF LAW

A person facing custodial interrogation must be informed that, under the Fifth Amendment, "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). Statements obtained during a custodial interrogation without proper warning and waiver of these rights are not admissible against the defendant. *Id.*

Interrogation for *Miranda* purposes refers "not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis,* 446 U.S. 291, 301 (1980). If a person "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda,* 384 U.S.at 473-74. The invocation

5

of the right to remain silent must be clear and unambiguous. *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010).

A waiver of *Miranda* rights must be made "voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444. The inquiry has two distinct dimensions. *Moran v. Burbine,* 475 U.S. 412, 421 (1986). "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* "Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id.* (internal quotations and citations omitted).

A waiver of *Miranda* rights may be express or implied. *Berghuis,* 560 U.S. at 384. *Miranda* "does not impose a formalistic waiver procedure," and a suspect's course of conduct after receiving and understanding his *Miranda* rights can indicate a waiver of those rights. *Id.* at 385-86. The Government bears the burden of proving the validity of a *Miranda* waiver by a preponderance of the evidence. *Colorado v. Connelly,* 479 U.S. 157, 168 (1986).

A review of the record, including the audio recording of the interview, shows that Ontiveros's Fifth Amendment rights were not violated. To begin, it is undisputed that he received the *Miranda* warning in Spanish and replied "yes" in Spanish when asked whether he understood those rights. Ontiveros concedes the facts regarding the *Miranda* warning, *see* Def. Mem. 5, 8, Dkt. No. 109, but contends the officers should have continued to ask him throughout the interview whether he understood his *Miranda* rights.

6

*Id.* at 9 ("Jessen and Johnson failed to adequately determine that Ontiveros understood that he had a right not to speak and Johnson's reading of the 'Miranda Warning' in Spanish was a mere formality that did not adequately protect Ontiveros's constitutional right against self-incrimination"). There is no authority to support this argument, and the Court finds he knew and understood his rights.

The question then is whether he either invoked his right to remain silent, or waived it by express statement or impliedly through his conduct in answering the officers' questions. Ontiveros does not argue that he expressly stated a desire to remain silent. Thus, the only issue is whether the Government has carried its burden to show a valid waiver of his *Miranda* rights. The Government seems to assert in passing that Ontiveros made an express waiver, but its primary argument is that his course of conduct in answering questions amounted to an implied waiver.

The Government states that Ontiveros "nodded and stated 'Yes' in an exchange when the officers originally asked him about giving up his rights by talking with them and asking him questions." Gov't Mem. 7, Dkt. No. 118. The first part of this sentence seems to argue Ontiveros made an express waiver by nodding and saying "yes." But the Government does not identify the specific question and answer on the transcript that purportedly amounts to an express waiver; it just generically refers to the "exchange" when the "officers," plural, "originally asked him" about waiver. *Id.* But the transcript shows that Officer Johnson and Investigator Jessen asked different questions at different times, and the transcript does not show him nodding or answering "yes" to a specific question about whether he wanted to remain silent or talk to them. In addition, apart from this single sentence, the Government does not further develop any argument with respect to express waiver.

According to the transcript, the dialogue unfolded as follows: When Officer Johnson asked Ontiveros whether he wanted to talk to them — in a somewhat garbled question (translated here from Spanish): "*Do you want to give you the rights that were mentioned and talk with is [sic] now?*" — he did not answer either yes or no. Instead, he answered the question with a question of his own: "*Uh, Like what -- what type of questions?*" Gov't Ex. 1A at 3. Officer Johnson replied "*It's -- it's yes or no*" — still in Spanish — then said in English, apparently to Investigator Jessen, "He's asking what kind of questions we're going to ask him. * * * And I'm telling him it is a 'yes or no' you want to talk to us or not." Gov't Ex. 1A at 3. At that point Ontiveros said in Spanish "*Uh … right now I feel …*" but then immediately switched to English and said "I don't feel good, so …" *Id.* Ontiveros did not finish the sentence. *Id.* He never gave her a yes-or-no answer to her question whether he wanted to talk to them, nor did he nod and say "yes" to her.

Rather, the next words said are by Investigator Jessen:

| Jessen | If I ask you a question you don't want to answer, you just say "no." Okay? So you might uh -- |
|---|---|
| Ontiveros | No. |
| Jessen | … ask him a few questions. |
| Ontiveros | Okay. |
| Jessen | Yes? He's nodding, "yes." |
| Ontiveros | Yes. |
| Jessen | Yes, okay. All right. How long have you been here at the uh, Key Inn? |
| Unidentified male voice in background | So 165 for [unintelligible/inaudible] [Heard in the background] |
| Jessen | How many days you think you've been here? |

8

| | |
|---|---|
| Ontiveros | I don't know, like four. |

Gov't Ex. 1A at 3-4. This portion of the transcript shows Ontiveros said "no," then nodded "yes," then said "yes" within the span of a few seconds. He did this in response to questions and statements by Investigator Jessen, some of which he directed to Ontiveros and some of which he appears to have directed to Officer Johnson, as he refers to Ontiveros in the third person.

When Ontiveros says "no" it is not clear whether he is simply repeating or affirming Investigator Jessen's directions to tell him "no" if there is any question Ontiveros does not want to answer. There was no other specific question pending. Then Investigator Jessen makes a statement about asking Ontiveros a few questions, but this statement apparently is directed to Officer Johnson, not Ontiveros, because it refers to Ontiveros in the third person ("… ask him a few questions"), something he would not say if he were talking directly to Ontiveros. Ontiveros then says "Okay." *Id.* at 3 (02:21). Investigator Jessen immediately indicates Ontiveros is nodding his head "yes", *id.* (02:22), and Ontiveros says "Yes", *id.* at 4 (02:25). Investigator Jessen then says "Yes, okay. All right.", *id.* (02:25), and starts asking him substantive questions which Ontiveros answers. This sequence of dialogue described above is not clear enough to be an express waiver by Ontiveros stating his desire to talk to them.[5]

---

[5] When listening to the audio recording, the Court wondered whether Investigator Jessen said words slightly different from what appears in the transcript, specifically, whether he asked the question "So do you mind my asking a few questions?" rather than making the statement "So you might uh -- … ask him a few questions." Gov't Exs. 1 & 1A (02:17-02:20). His words are slightly garbled in the middle, as the transcript shows. But neither party has challenged the transcript, and any speculation about these precise words does not alter the Court's determination that the record is not clear here, and does not affect the Court's ultimate finding of a valid implied waiver.

However, his course of conduct in answering questions after being advised of and understanding his *Miranda* rights establishes an implied waiver here. *See Berghuis,* 560 U.S. at 385-86. *Miranda* does not require a "formalistic waiver procedure." *Id.* at 385. The Court finds the Government has met its burden to show by a preponderance of the evidence that Ontiveros's waiver was knowing, voluntary, and intelligent under the totality of the circumstances. *Moran*, 475 U.S. at 421.

First, the record shows no "intimidation, coercion, or deception" during the interview or in the circumstances surrounding it. *See id.* His decision to answer Investigator Jessen's questions was "voluntary in the sense that it was the product of a free and deliberate choice." *See id.* Ontiveros argues he was "sick and taking medication and may have been impaired." Def. Mem. 8, Dkt. No. 109. However, nothing in the record indicates he was impaired in his ability to understand his rights and competently decide whether to exercise them. Moreover, the entire interview lasted just under seven minutes. These circumstances do not demonstrate that his decision to talk was the result of intimidation or coercion.

Second, the record shows Ontiveros knew and understood his rights, including the right not to talk to the officers, and was able to comprehend and respond to questions in English. As discussed above, it is undisputed he was read the *Miranda* warning and replied "yes" (all in Spanish) when asked whether he understood those rights. Further, he showed proficiency in English throughout the interview. Ontiveros argues he did not know English well enough to understand and answer questions in English, but the record indicates otherwise. Early in the interview Ontiveros himself switched from Spanish to English. Gov't Ex. 1A at 3 (02:04) ("*Uh… right now I feel …* I don't feel good, so …"). He answered questions in English without any apparent struggle for words. When

10

Investigator Jessen questioned him during the substantive part of the interview (*i.e.,* questions relating to the offense charged), Ontiveros never asked for clarification of any word or phrase, never asked for Officer Johnson to translate or assist in any way, never asked any questions in Spanish, and never indicated in any way that he did not understand a question or lacked the vocabulary to answer in the way he wanted to. *See* Gov't Ex. 1A at 4-8; Gov't Ex. 1 (audio recording).

Ontiveros asserts he "clearly explained to officers that he needs a Spanish interpreter" but there is nothing in the transcript to support his assertion. *See* Motion at 1, Dkt. No. 79. The only time he mentioned speaking Spanish was at the outset of the interview when Investigator Jessen told him, in English, that he needed to read Ontiveros his *Miranda* rights and asked "Do you understand that." Ontiveros replied "Yes," in English, then asked him in Spanish whether he speaks Spanish. Gov't Ex. 1A at 1. Investigator Jessen responded by asking whether he wanted his *Miranda* rights to be read to him in Spanish, to which Ontiveros replied (again, all in English) "You -- you don't have …". *Id.* Investigator Jessen then interrupted him, said Officer Johnson speaks Spanish, and asked again whether Ontiveros would rather have them read in Spanish. *Id.* at 2. He answered "Okay." *Id.* Officer Johnson then read the *Miranda* warning in Spanish, and Ontiveros affirmed that he understood his rights. *Id.* He did not say at any point that he needed an interpreter. In addition, as discussed above, his course of conduct indicates he was sufficiently proficient in English to understand and answer the questions. The totality of circumstances shows he had the "requisite level of comprehension" to make a knowing and intelligent waiver. *See Moran*, 475 U.S. at 421.

Accordingly, Ontiveros's statements at the January 10, 2022 interview in the hotel room were not made in violation of his Fifth Amendment rights, and his motion to suppress should be denied.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS THAT Defendant Saditt Fernando Ontiveros's Motion to Suppress Statement [Dkt. No. 79] be DENIED.

Dated: September 16, 2022                s/ David T. Schultz
                                         DAVID T. SCHULTZ
                                         U.S. Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).